IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAYDALE R. MITCHELL,

                Petitioner,                OPINION & ORDER

   v.

                                                   14-cv-473-jdp
UNITED STATES OF AMERICA,                   11-cr-83-jdp

                Respondent.

---

Petitioner Raydale Mitchell is currently in custody at the United States Penitentiary in Marion, Illinois. In 2012, appearing before District Judge Barbara Crabb, Mitchell pleaded guilty to distributing heroin in violation of 21 U.S.C. § 841(a)(1). Judge Crabb sentenced Mitchell to 168 months of imprisonment.[1] *See United States v. Mitchell*, No. 11-cr-83-jdp (W.D. Wis. June 1, 2012), Dkt. 50 and 55.

Mitchell has filed a motion for postconviction relief under 28 U.S.C. § 2255, alleging that he was denied the effective assistance of counsel in his criminal proceedings. He followed with a motion to amend his petition to include an argument that his sentence under the career-offender sentencing guideline is unconstitutional under theories articulated in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *United States v. Hurlburt*, No. 15-1686, 2016 WL 4506717 (7th Cir. Aug. 29, 2016) (en banc). I will allow Mitchell to amend his petition to include his *Johnson* claim, but after considering the parties' briefing and the record of the criminal proceedings, I will deny Mitchell's § 2255 petition in all respects.

---

[1] Judge Crabb recused herself from this § 2255 litigation. *See* Dkt. 3 in the above-captioned '473 case. All further docket citations are to the '473 case, unless otherwise noted.

BACKGROUND

Mitchell was indicted in July 2011 for distributing heroin in violation of 21 U.S.C. § 841(a)(1). He was accused of distributing between 700 and 1,000 grams of heroin in a series of transactions starting in November 2009, to a drug-dealing couple who ended up being recruited by the government as informants. In the last of these transactions, Mitchell recruited his brother to assist in selling heroin to the informant couple in what turned out to be a "controlled buy" orchestrated by law enforcement.

Mitchell entered a guilty plea. According to the presentence report, Mitchell had two prior convictions for crimes of violence, armed robbery in the Circuit Court for Cook County, Illinois (88CR1639602); and aggravated battery in the Circuit Court for Dane County, Wisconsin (case no. 03CF909). This made him a career offender under United States Sentencing Guidelines § 4B1.1(a) and (b)(3). His offense level was 29, after three levels had been deducted for acceptance of responsibility, and his guideline sentencing range was 151 to 188 months. Alternatively, Mitchell had an identical offense level of 29 based on the amount of heroin involved in the transactions, which placed him at level 30, U.S.S.G. § 2D1.1(a)(5) and (c)(5), minus the three-level decrease for acceptance of responsibility, plus two levels for his role as an organizer, U.S.S.G. § 3B1.1(c). District Judge Barbara Crabb sentenced Mitchell to a within-guideline term of 168 months. Mitchell appealed his sentence, but counsel concluded that the appeal was frivolous and moved to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). The court of appeals denied the appeal after considering Mitchell's and counsel's briefing. *United States v. Mitchell*, 525 F. App'x 479 (7th Cir. 2013).

ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a prisoner must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack." Relief under § 2255 is appropriate only for "'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). An evidentiary hearing is not required if "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Menzer v. United States*, 200 F.3d 1000, 1006 (7th Cir. 2000).

I conclude that no hearing is necessary because the record makes clear that none of Mitchell's arguments have any merit. Mitchell raises several claims for relief, mostly premised on the ineffectiveness of his counsel. Claims for ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a petitioner must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

Much of Mitchell's brief-in-chief sets forth conclusory statements about counsel's overall ineffectiveness. Mitchell generally contends that counsel "failed to present a reasonable defense strategy" and conduct proper discovery. But these statements, on their own, are too vague to provide grounds for relief, because they are unsupported by an

3

explanation of what counsel should have done differently or how the outcome of his case would have been different with effective counsel. It is Mitchell's burden to provide "sufficiently precise information, that is, a comprehensive showing as to what the [allegedly inadequate] investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotation omitted). I will turn to address the arguments Mitchell raises that he supports with some explanation about the nature of the alleged deficient attorney performance and how it harmed him. None of his arguments persuade me that his conviction or sentence should be vacated.

**A.  Plea**

One of the main thrusts of Mitchell's brief-in-chief is that counsel did not "negotiate a reasonable plea," and she pushed Mitchell into accepting a plea even though he did not fully understand it. Mitchell states that counsel promised him that he would get no more than a 10-year sentence if he pleaded guilty, and failed to inform him that he would be subject to the career-offender guidelines and that he was giving up the opportunity to attack the credibility of the informants who told law enforcement about his heroin dealing.

All Mitchell brings in support of this claim are his bare assertions that counsel promised him no more than a 10-year sentence and that he did not know he was giving up his right to confront the informants. But these assertions are belied by the record, which shows that Mitchell signed a proposed plea agreement stating that the maximum penalty for his offense was 20 years, and that he "should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States." Dkt. 25 in the '83 criminal case, at 1-2. He later confirmed, under oath, at the plea hearing, that he understood that Judge Crabb could sentence him to a maximum of 20 years

of imprisonment, that no one made a promise with him to get him to plead guilty, and that he did not have any reason to expect a particular sentence. Dkt. 56 in the '83 criminal case, at 5, 10-11. Likewise, in the plea agreement and at the plea hearing, Mitchell stated that he understood he was giving up the right to confront witnesses against him. Dkt. 25 in the '83 criminal case, at 2; Dkt. 56 in the '83 criminal case, at 7.

Mitchell's bare assertions contradicting the record of the plea "may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *see also Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) ("When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else. The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing.") (internal quotations omitted). *See also Key v. United States*, 806 F.2d 133, 138-40 (7th Cir. 1986) (allegation that counsel made promises to defendant must be supported by allegations specifying terms of alleged promises, when, where. and by whom such promises were made, and precise identity of any witnesses to promise; even these allegations may not be sufficient to warrant evidentiary hearing if they do not overcome presumption of record). Because Mitchell does not make a showing overcoming the presumption that he meant what he said in pleading guilty, he cannot succeed on these grounds.

With regard to the career-offender guidelines, it is difficult to believe that Mitchell was not aware of their applicability because, as discussed in more detail below, counsel objected to the probation office's application of these guidelines in the presentence report, and then withdrew her objection at the sentencing hearing, with Mitchell present. But even if

counsel had kept Mitchell in the dark regarding these guidelines, Mitchell could not have been prejudiced by them because his offense level (29) was identical if calculated using the drug quantity and organizer guidelines instead of the career-offender guidelines. Mitchell brings claims about counsel's challenges to those guidelines, but as discussed further below, he does not show that he is entitled to relief on those issues.

B. Organizer guideline

Mitchell also argues that counsel was ineffective by failing to challenge various guidelines used in sentencing him. Mitchell contends that counsel should have challenged the two-level increase in his sentence for his role as an organizer of the transactions, because he and his brother were working as equal partners. But counsel did raise this objection, and it was denied by Judge Crabb at the sentencing hearing. *See* Dkt. 55 in the '83 criminal case, and again on direct appeal. *Mitchell*, 525 F. App'x at 481. Mitchell does not point to any evidence that could have reasonably rebutted both courts' conclusions that he acted as an organizer by recruiting his brother to assist him in one of the transactions. He suggests that he was merely the middleman in a larger drug organization, which may very well be true, but that does not absolve him of his "organizer" role in recruiting his brother, which is all that is necessary to meet U.S.S.G. § 3B1.1(c).

C. Drug quantity guideline

Mitchell contends that counsel did not adequately object to the drug quantity evidence. He states that challenging the informants' testimony establishing a total of around 893 grams of heroin distributed by Mitchell "would likely have altered the sentencing platform for determined guideline ranges." Dkt. 7, at 8. He also suggests that had counsel obtained testimony from his brother, their "shared acceptance of responsibility may have

6

altered the drug quantity balance . . . and moved [Mitchell] to a more moderate guideline range below the determined 893.64 grams." *Id*.

But Mitchell fails to show that counsel's performance was deficient, much less prejudicial to him. Importantly, counsel was forced to work around the fact that Mitchell admitted to distributing 700 grams of heroin. This is fatal to Mitchell's claim, because the quantity guidelines used in Judge Crabb's calculations, U.S.S.G. § 2D1.1(a)(5) and (c)(5), list a range of "[a]t least 700 G but less than 1 KG of Heroin." Mitchell's admission alone qualified for this range.

Counsel *did* object to the presentence investigation report's statement that the total amount of distributed heroin was 893.64 grams (795 estimated by the informants, along with the 98.64 grams the informants bought in the controlled buy). The probation office responded to counsel's objection by noting that given Mitchell's admission, there was no dispute that Mitchell distributed somewhere between 700 and 1,000 grams. Counsel withdrew her objection. This was not deficient performance because Mitchell had already admitted to distributing enough heroin to fit within the applicable guideline.

Mitchell's argument about obtaining testimony from his brother is not helpful either. Mitchell does not explain what his brother would have testified about that would have helped the quantity analysis. Lab testing established the amount of heroin present in the controlled buy, and that precise amount is beside the point given Mitchell's admission to distributing 700 grams. Mitchell seems to be saying that their shared responsibility for the controlled buy should have an effect on the quantity that he could be charged with, but that is incorrect. Both Mitchell and his brother can be charged for distributing the entire amount because they worked together to sell the drugs.

**D. Career-offender guideline**

Mitchell challenges the application of the career-offender guideline in two ways. As discussed above, Mitchell's challenges to the career-offender guidelines fail because he would have received the same sentence using the drug quantity and organizer guidelines. But I also conclude that Mitchell's arguments about the career-offender guideline fail on their merits.

Mitchell states that he believes his 1988 Illinois armed robbery conviction is too old to be counted in the career-offender analysis. But counsel raised this issue in objecting to the presentence investigation report. As the court of appeals noted, the probation office responded that Mitchell was still serving his sentence on this crime until February 1995, which came within 15 years of the start date of Mitchell's distribution of heroin at issue in this case. *Mitchell*, 525 F. App'x at 481; *see also* U.S.S.G. § 4A1.2e(1) ("Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period."). Counsel then withdrew the objection. Mitchell does not develop an argument for why he believes the armed robbery should not count under this analysis.

Mitchell filed a motion to amend his petition to include a new argument: his sentence is invalid because portions of the career-offender guidelines have been declared unconstitutional. In a recent case, the full panel of the Court of Appeals for the Seventh Circuit concluded that the "residual clause" of guideline § 4B1.2(a) was unconstitutionally vague. *United States v. Hurlburt*, No. 15-1686, 2016 WL 4506717, at *7 (7th Cir. Aug. 29, 2016) (en banc) (citing *Johnson v. United States*, 135 S. Ct. 2551 (2015)).

Mitchell contends that this court relied on the now-unconstitutional residual clause to find that his Illinois armed robbery conviction and Wisconsin aggravated battery conviction qualified as "crimes of violence" under the career-offender guideline.

The guideline in place at the time of Mitchell's sentencing defined "crimes of violence" as any offense punishable by more than one year of imprisonment that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2011). Mitchell believes that his armed robbery and aggravated battery sentences fell under the second half of subsection (2), known as the "residual clause."

From the sentencing transcript, it is unclear whether Judge Crabb actually relied on the residual clause as opposed to subsection (1), also known as the "elements clause," in finding the two prior convictions to be crimes of violence. But even had she relied on subsection (2), it is clear that both convictions qualify as crimes of violence under the elements clause: both of the prior crimes had "as an element the use, attempted use, or threatened use of physical force against the person of another."

Mitchell's Illinois armed robbery conviction counts as a crime of violence under the elements clause. At the time of the offense, the Illinois robbery statute provided that "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force," Ill. Crim. Code, Ch. 38, § 18-1 (1988), and the armed robbery statute applied when the offender "carries on or about his person or is otherwise armed with a firearm or other dangerous weapon," § 18-2. Courts have previously concluded that a conviction for armed robbery under these statutes counts as a

9

crime of violence. *See Adams v. United States*, No. 16-1096, 2016 WL 4487835, at *2 (C.D. Ill. Aug. 25, 2016); *Shaw v. United States*, No. 16-cv-315-bbc, 2016 WL 4046810, at *1 (W.D. Wis. July 27, 2016).

Mitchell's Wisconsin aggravated battery conviction also counts under the elements clause because that crime required that the offender "caused great bodily harm to another by an act done with intent to cause bodily harm to that person or another." *See* Wis. Stat. § 940.19(4) (2001-02); *cf. United States v. Johnson*, 556 F. App'x 517, 518 (7th Cir. 2014) (elements-clause challenge to conviction under similar offense under § 940.19(2) would be frivolous); *Ball v. United States*, No. 16-cv-443-bbc, slip op. at 2 (W.D. Wis. July 26, 2016) ("[i]t is indisputable that causing substantial bodily harm to another [under § 940.19(2)] is a crime of violence" under elements clause). Because the court's career-offender finding does not depend on the residual clause of guideline § 4B1.2(a), that finding is not unconstitutional under *Hurlburt* and *Johnson,* and Mitchell's sentence cannot be vacated on that ground.

E.  **Unreasonableness of sentence**

Mitchell's brief contains a section unrelated to ineffectiveness of counsel, titled "SENTENCE IMPOSE[D] WAS SUBSTANIVELY UNREASONABLE," Dkt. 1, at 44. But the section contains only boilerplate legal citations about the test used to determine unreasonableness; Mitchell does not explain why he thinks the sentence was unreasonable. Also, the court of appeals already considered this line of argument in Mitchell's direct appeal:

> Counsel finally considers whether Mitchell could argue that his 168–month sentence is unreasonable. As counsel recognizes, however, this sentence is within the guidelines range and thus presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Pape*, 601 F.3d 743, 746 (7th Cir. 2010). Moreover, counsel has not been able to identify any reason to disregard that presumption. The district court discussed the sentencing factors under 18 U.S.C. § 3553(a),

10

> highlighting the need to protect the community from Mitchell, whose crimes had become increasingly violent.

*Mitchell*, 525 F. App'x at 481. Mitchell cannot relitigate that claim in this collateral proceeding. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

### F. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless Mitchell makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Mitchell has not made a showing, substantial or otherwise, that either his conviction or sentence was decided contrary to federal law. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Mitchell a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Raydale Mitchell's motion to amend his 28 U.S.C. § 2255 motion, Dkt. 8, is GRANTED.

2. Petitioner's "motion to proceed [with his] current § 2255 motion," Dkt. 11, is GRANTED.

3. Petitioner's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, Dkt. 1, is DENIED. The clerk of court is directed to enter judgment for respondent and close this case.

4. Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered October 31, 2016.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge